[Civ. No. 2083.   First Appellate District.—October 30, 1917.]

## H. M. WOOLLEY, Appellant, v. NANCY E. BATCHELDER et al., Respondents.

BROKERS—SALE OF REAL ESTATE—STATUTE OF FRAUDS—ACTION FOR COMMISSION.—To entitle a broker to commission, he must show written authority and also that he had either accomplished the sale or produced a purchaser ready, willing, and able to purchase.

ID.—SALE BY OWNERS.—Under the facts in this case it is held that the broker was not entitled to recover.

APPEAL from a judgment of the Superior Court of Alameda County.   T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Fabius T. Finch, for Appellant.

J. A. Elston, and G. Clark, for Respondents.

RICHARDS, J.—This is an appeal from a judgment in favor of the defendants in an action brought to recover a real estate agent's commission.

The facts of the case are in the main undisputed, and are these: The property involved in the transaction out of which the plaintiff claims his right to a commission to have arisen is a mining property known as the Rising Hope mine. Many years ago the mine was located by three persons named McCrellish, Hamilton, and Batchelder, the title to the property being taken in the name of McCrellish alone, and upon his death it was distributed to his widow, Mary P. McCrellish, and stood in her name until her death in the year 1911. It

is conceded, however, that Hamilton and Batchelder, the associates of McCrellish, had at all times each a one-fifth interest in the mine, which in course of time descended to Mrs. Batchelder and Mrs. Hamilton, the defendants herein. McCrellish in his lifetime owned, and his widow succeeded to, a three-fifths interest in the mine. Efforts were made from time to time to sell the mine but without success, until finally in the year 1910 Mrs. McCrellish, through the aid and services of the plaintiff in this action—who, however, was not acting under any written authority at the time—succeeded in making a contract with one Schuyler N. Warren, by the terms of which the latter was given the right to enter upon the property and do certain development work thereon, rendering a monthly account to Mrs. McCrellish, through the plaintiff as her agent, of his labor and expenditures upon the premises, and paying into the Bank of California twenty per cent of the gross amount of the clean-ups resulting from his operation of the mine. Warren was also by this agreement given an option to purchase the mine for the price of forty thousand dollars, which was to be paid by the aggregation of these sums accruing to Mrs. McCrellish from the clean-ups of the mine. The agreement contained a clause providing that "H. M. Woolley may represent the party of the first part [Mrs. McCrellish] and J. R. Partridge and G. W. Englehardt may represent the party of the second part [Warren] in all the above-mentioned matters." It was also provided that a deed conveying the entire property should be placed in escrow with the Bank of California to be delivered to Warren when the sum of forty thousand dollars, the purchase price of the mine, was paid in the manner specified in the agreement. This deed was so deposited, and with it Mrs. McCrellish also deposited two written orders directing the bank to pay the plaintiff herein ten per cent of all moneys paid in by Warren, and also to pay Mr. Partridge ten per cent of such moneys. Mrs. McCrellish died in February, 1911, and not long after her death Mrs. Hamilton and Mrs. Batchelder brought an action against the executor of her estate to have it determined that they were each the owner of a one-fifth interest in the mine. Judgment was rendered in their favor in the action in July, 1911, and about the time of its entry the plaintiffs in that action made an agreement with the executor of Mrs. McCrellish's estate by which

they ratified expressly the Warren agreement. It does not appear, however, that either Mrs. Hamilton or Mrs. Batchelder at the time of ratifying the Warren agreement were aware of the existence of the orders in favor of Woolley and Partridge deposited with the escrow deed, or that they became aware of the same until the present action was begun. In the month of November, 1911, after the rights and interests of Mrs. Hamilton and Mrs. Batchelder had been established in the aforesaid action, they each executed and caused to be deposited in escrow with the Bank of California their respective deeds to Warren each to an undivided one-fifth interest in the mine, for a consideration to each of the sum of eight thousand dollars, to be paid by Warren in the manner specified in the original agreement with him made by Mrs. McCrellish and which they had theretofore ratified. During the period of three and one-half years from and after the date of the original Warren agreement no clean-ups occurred at the mine as the result of the latter's operation of it under said agreement, and consequently no money whatever was ever paid into the bank under or by virtue of said agreement or of anything done thereunder. In the month of November, 1913, Mrs. Hamilton and Mrs. Batchelder sold and transferred their interests in the mine to Warren for a cash payment and price of three thousand dollars each. Subsequently the heirs and legatees of Mrs. McCrellish, of whom the plaintiff in this action was one, sold and conveyed their three-fifths' interest in the mine to Warren for the sum of nine thousand dollars. Thereafter the plaintiff commenced this action to recover a real estate agent's commission from Mrs. Hamilton and Mrs. Batchelder, his contention being that under and by virtue of the original Warren agreement subsequently ratified by them he had been constituted the agent in writing of the owners of the mine in so far as any sale of it to Warren was concerned, and that the said defendants having thereafter and throughout the life of said agreement dealt with Warren directly, and sold their interest in the mine to him, they were bound to pay to the plaintiff a commission on their said sale.

Upon the trial of the case the court found against the plaintiff upon this contention, and rendered judgment in the defendant's favor, from which judgment the plaintiff prosecutes this appeal.

We are of the opinion that the trial court was not in error in its findings and judgment in this case. In order to effect a recovery against these defendants, it was incumbent upon the plaintiff to prove that he was duly authorized by an instrument in writing to act as the agent of the owners of the property in negotiating or accomplishing the sale of the property to someone, and that he had either accomplished such sale under such agency, or had procured a purchaser therefor who was ready, willing, and able to purchase the same according to the terms of his agency. But in this respect an inspection of the original agreement with Warren upon which the plaintiff relies for proof of his agency shows that he had no authority in writing during any part of the negotiations with Warren until they had been consummated in the agreement in writing with Warren, and that the clause in the agreement designating the plaintiff as the agent of Mrs. McCrellish had reference not to what had already been done in the way of finding and producing Warren as a prospective purchaser of the property, but to what Warren was thereafter to do in connection with his operation of the mine and with the possible exercise of his option to purchase the same. The plaintiff could have earned or been awarded no commissions from Mrs. McCrellish or anyone else upon the strength of that agreement until Warren had exercised such option and had consummated the purchase of the mine in accordance with the terms of his agreement. It is conceded that Warren never did this, and that he never in fact did anything in the way of exercising his said option or of making any of the deposits in the Bank of California, through the accumulation of which the purchase price of the mine, the sum of forty thousand dollars, was to be paid. The agreement with Warren was in no sense a binding contract on his part to purchase the property or to do any of the acts of development and operation through the means of which its purchase might eventually be accomplished by him. It was at best a mere option which was never exercised; and it nowhere appears that Warren was ever at any time ready or willing or able to purchase the property for the sum of forty thousand dollars, or for anything approaching said sum. This being so, we think it is clear that the defendants in this action were in no wise bound to pay the plaintiff a commission on account of any services rendered by him under the terms of the Mc-

Crellish agreement, or of the defendants' ratification of the same, and that after the lapse of three years' time following the execution of said agreement, during which nothing had been done in the way of carrying into effect its terms, the defendants were at liberty to deal with Warren independently and to enter into a cash sale of their interests in the mine to him, and that their transaction in so doing has no relation to the original agreement and cannot be construed as in any way carrying into effect its terms so as to entitle the plaintiff to claim that they were dealing with a purchaser produced by him. The record contains no evidence that the plaintiff had anything to do with the transaction between these defendants and Warren directly by which he became the purchaser of their two-fifths' interest in the property for a cash price less than one-half of the amount stipulated as its purchase price in Warren's original option.

The cases cited by counsel for the appellant to the effect that an owner of property, after having duly authorized a broker to find a purchaser for the same, cannot deal with such purchaser directly and thus defraud the broker out of his commissions, have no application to the facts of the case at bar. Whatever may have been the scope or binding effect of the original appointment of the plaintiff as the agent of Mrs. McCrellish, and of the defendants' ratification of that agreement, we are satisfied that it cannot be extended to cover the later and independent transaction between Warren and these defendants directly with which the plaintiff had no connection and in which he is not shown to have taken any part.

It follows that the judgment of the trial court should be affirmed, and it is so ordered.

Lennon, P. J., and Kerrigan, J., concurred.